UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                             :
  RAN RUBIN et al.,                                          :
                                        Plaintiffs,          :
                                                             :        19 Civ. 4320 (LGS)
                      -against-                              :
                                                             :        **OPINION AND ORDER**
  LOREN K. MILLER et al.,                                    :
                                        Defendants.  :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

     Plaintiffs CTRL-labs, Inc. ("CTRL") and Dr. Ran Rubin ("Rubin"), a computational

neuroscientist, bring this action pursuant to 8 U.S.C. § 1153(b)(1)(A) of the Immigration and

Nationality Act (the "INA") and the Administrative Procedure Act (the "APA") against

Defendants Loren K. Miller, Director of the Nebraska Service Center and Chad Wolf,[1] Acting

Director of the U.S. Department of Homeland Security ("DHS"), challenging the denial of

Rubin's employment-based immigrant visa petition based on "extraordinary ability."  The parties

cross-move for summary judgment.  For the following reasons, summary judgment is granted to

Plaintiffs and denied to Defendants.

## I.   BACKGROUND

     Unless otherwise noted, the facts below are drawn from the record and are undisputed.[2]

     The INA provides an employment-based visa ("EB-1") for individuals with

"extraordinary ability in the sciences, arts, education, business, or athletics which has been

---

[1] Acting Secretary of Homeland Security Chad Wolf is automatically substituted for former
Secretary, Kevin K. McAleenan, by operation of law.  *See* Fed. R. Civ. P. 25(d).

[2] Pursuant to the September 18, 2019, Order, in lieu of a 56.1 Statement, the parties were
required to file a single joint statement of facts with citations to the administrative record and, to
the extent that any fact was disputed, each party's version of that fact included.  Despite the
Court's order, the parties submitted separate statements of fact.

demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation."  8 U.S.C. § 1153(b)(1)(A)(i).  To qualify for EB-1 classification, an individual must demonstrate that he or she "seeks to enter the United States to continue work in the area of extraordinary ability" and that the individual's "entry into the United States will substantially benefit prospectively the United States."  8 U.S.C. §§ 1153(b)(1)(A)(ii), (iii).  Under 8 C.F.R. § 204.5(h)(2), extraordinary ability is defined as "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor."  *Id.*

      Rubin is a national of Israel.  He holds a bachelor's degree in physics as well as an M.Sc. and Ph.D. in computational neuroscience from the Hebrew University of Jerusalem, and is a former post-doctoral fellow at Columbia University in New York City.  Rubin is presently employed as a lead scientist with CTRL, a New York City-based company, founded in 2015.  He leads CTRL's algorithmic research and development efforts in connection with its two-dimensional neural control, which is one of the foundational building blocks for the "CTRL-kit," a wearable neural interface for software developers, creators and researchers across the globe. Rubin asserts that he is recognized throughout the global scientific community as an elite brain scientist and leader in the field of neuronal coding and learning.  Specifically, he is an expert on the "tempotron model" of neural learning and information processing, an area of neuroscience involving the capabilities and limitations of neural computation in living and artificial systems.

      On or about May 25, 2018, Rubin filed an I-140 petition (the "Petition") with U.S. Citizenship and Immigration Service ("USCIS") -- a component of DHS -- seeking EB-1 classification in the field of neuroscience.  To satisfy the requisite evidentiary criteria under 8 C.F.R. § 204.5(h)(3), Rubin submitted extensive documentation in support of the Petition,

including opinion letters from eight leading experts in the field of neuroscience; his publications, including peer-reviewed articles in highly regarded scientific journals including *Neuron* and the *Proceedings of the National Academy of Sciences* and a book chapter on neuronal coding entitled *Neural Coding and Decoding with Spike Times*; evidence that his scholarly work is cited at a rate considerably above his peers; evidence of his presentations at prominent scientific meetings and symposia, such as the Bernstein Conference, the Swartz Foundation Annual Meeting and the Computational Systems Neuroscience Meeting; and evidence of receipt of multiple, nationally recognized prizes and awards for excellence in his field, such as the *Chateaubriand* fellowship.

On or about January 22, 2019, USCIS issued a Request for Evidence ("RFE"), directing Rubin to provide additional information and evidence to support his Petition.  The RFE acknowledges that Rubin satisfied two of the evidentiary criteria set forth for extraordinary ability: (1) authorship of scholarly articles under 8 C.F.R. § 204.5(h)(3)(iii) and (2) serving as a judge of the work of others under 8 C.F.R. § 204.5(h)(3)(iv).  However, the RFE explains that Rubin failed to satisfy any of the other evidentiary criteria.  With respect to the "major significance" of Rubin's contributions under 8 C.F.R. § 204.5(h)(3)(v), the RFE notes, in part, that the expert "letters of opinion . . . do not illustrate [Rubin's] original contributions of 'major significance' to [Rubin's] field and profession."  Regarding Rubin's performance in a "leading or critical" role for distinguished organizations within his field under 8 C.F.R. § 204.5(h)(3)(viii), the RFE notes that "the evidence does not contain detailed and probative information that specifically addresses how [Rubin's] role was leading or critical for an entire organization."

On or about April 15, 2019, Rubin submitted a twelve-page response to the RFE, including legal arguments and supplemental evidence addressing the "major significance" and "leading or critical" role criteria.  On April 22, 2019, USCIS denied the Petition (the "Decision

Letter"), reiterating that Rubin had satisfied two evidentiary criteria, but maintaining that he had failed to establish eligibility in a third criteria.  On May 13, 2019, Rubin filed the instant action, seeking declaratory, injunctive and related relief, including an Order setting aside the denial of the Petition as arbitrary, capricious and contrary to the law.

## II.    LEGAL PRINCIPLES

### A.    Summary Judgment

The APA directs courts to "hold unlawful and set aside" agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *accord Make the Rd. New York v. Cuccinelli*, 419 F. Supp. 3d 647, 661 (S.D.N.Y. 2019).  A decision is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency," or when a decision "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *accord Cuccinelli*, 419 F. Supp. 3d at 661-62.

While "[t]he scope of review under the arbitrary and capricious standard is narrow," an agency is still required to "articulate a satisfactory explanation for its action" based on review of the record.  *State Farm Mut. Auto. Ins. Co.*, 463 U.S. at 43 (internal quotation marks omitted); *accord Cuccinelli*, 419 F. Supp. 3d at 661.  "This is not to suggest that judicial review of agency action is merely perfunctory."  *Islander E. Pipeline Co., LLC v. McCarthy*, 525 F.3d 141, 151 (2d Cir. 2008).  "To the contrary . . . judicial inquiry must be 'searching and careful.'"  *Id.* (quoting *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 378 (1989)); *accord Nat. Res. Def. Council, Inc. v. U.S. Envtl. Prot. Agency*, 438 F. Supp. 3d 220, 231 (S.D.N.Y. 2020).

Specifically, there must be a "'rational connection between the facts found and the choice made.'" *State Farm Mut. Auto. Ins. Co.*, 463 U.S. at 43 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)); *accord Nat. Res. Def. Council, Inc.*, 438 F. Supp. 3d at 231. As Rubin's claims are brought under the APA, review is confined to the administrative record. *See Brodsky v. U.S. Nuclear Regulatory Comm'n*, 704 F.3d 113, 119 (2d Cir. 2013); *accord Doolen v. Esper*, No. 16 Civ. 8606, 2018 WL 4300529, at *4 (S.D.N.Y. Sept. 10, 2018).

### B.      EB-1 Classification

USCIS employs a two-step approach to adjudicating petitions for EB-1 classification under the INA.[3] *See Kazarian v. U.S. Citizenship & Immigration Servs.*, 596 F.3d 1115, 1119-20 (9th Cir. 2010); *accord Chursov v. Miller*, No. 18 Civ. 2886, 2019 WL 2085199, at *2-6 (S.D.N.Y. May 13, 2019). First, USCS determines whether the initial evidentiary threshold is met. A petitioner may provide "evidence of a one-time achievement (that is, a major, international[ly] recognized award)." 8 C.F.R. § 204.5(h)(3); *accord Kazarian*, 596 F.3d at 1119. Alternatively, a petitioner may satisfy at least *three* of the ten criteria outlined under 8 C.F.R. § 204.5(h)(3). *See* 8 C.F.R. § 204.5(h)(3)(i)-(x); *accord Kazarian*, 596 F.3d at 1119. Once this threshold is met, USCIS determines whether a petitioner has *also* shown "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor," 8 C.F.R. § 204.5(h)(2), and "that [petitioner] . . . has sustained national or international acclaim and that his or her achievements have been recognized in the

---

[3] Following *Kazarian v. U.S. Citizenship & Immigration Servs.*, 596 F.3d 1115 (9th Cir. 2010), USCIS has applied the same two-step approach to determining EB-1 classification nationwide, as reflected in its Policy Memorandum entitled "Evaluation of Evidence Submitted with Certain Form I-140 Petitions; Revisions to the *Adjudicator's Field Manual*" (the "AFM"). U.S. CITIZEN AND IMMIG. SERVS., Policy Memorandum Re: Evaluation of Evidence Submitted with Certain Form I-140 Petitions; Revisions to the *Adjudicator's Field Manual* (*AFM*) Chapter 22.2, *AFM* Update AD11-14 PM-602-0005.1 (Dec. 22, 2010).

field of expertise."  8 C.F.R. § 204.5(h)(3); *accord Kazarian*, 596 F.3d at 1119-20.  As the Ninth

Circuit noted in *Kazarian*, the "scant caselaw" on EB-1 classification "indicates that the

regulations regarding this preference classification are extremely restrictive."  596 F.3d at 1120

(internal quotation mark and alteration omitted) (collecting cases).  A petitioner bears the burden

to prove by a preponderance of the evidence that he is eligible for the requested benefit.  *See* 8

C.F.R. § 103.2(b)(1); *Noroozi v. Napolitano*, 905 F. Supp. 2d 535, 545 (S.D.N.Y. 2012).

## III.   DISCUSSION

The parties dispute whether Rubin has established a third necessary criteria under 8

C.F.R. § 204.5(h)(3).  Plaintiffs argue that USCIS's findings -- (1) that Rubin has not made

original contributions of major significance to his field under 8 C.F.R. § 204.5(h)(3)(v) and (2)

that he has not performed in a leading or critical role for distinguished organizations or

establishments under 8 C.F.R. § 204.5(h)(3)(viii) -- are arbitrary and capricious and should be

overturned.  Defendants contend that both decisions were reasonably determined.  As explained

below, Plaintiffs have the better argument, meaning that Rubin has established four of the

necessary criteria when only three are necessary.  Summary judgment is granted to Plaintiffs and

denied to Defendants.

### A.      Evidence of an Original Scientific Contribution of Major Significance

To satisfy the criteria set forth in 8 C.F.R. § 204.5(h)(3)(v), a petitioner must set forth

"[e]vidence of the [petitioner's] original scientific, scholarly, artistic, athletic, or business-related

contributions of major significance in the field."  8 C.F.R. § 204.5(h)(3)(v).  The USCIS Policy

Memorandum entitled "Evaluation of Evidence Submitted with Certain Form I-140 Petitions;

Revisions to the *Adjudicator's Field Manual*" (the "AFM"), provides further guidance.  U.S.

CITIZEN AND IMMIG. SERVS., Policy Memorandum Re: Evaluation of Evidence Submitted with

Certain Form I-140 Petitions; Revisions to the *Adjudicator's Field Manual* (*AFM*) Chapter 22.2, *AFM* Update AD11-14 PM-602-0005.1 (Dec. 22, 2010).  Among other arguments, Plaintiffs challenge the finding that evidence in existence prior to the preparation of the Petition carries greater weight than any new materials -- including at least eight opinion letters from neuroscience experts -- because an individual with "sustained national or international acclaim should be able to produce unsolicited materials reflecting that acclaim."  Plaintiffs also challenge the finding that "[a]lthough [the opinion letters] detail the novelty of [Rubin's] . . . research," the letters "do not contain specific, detailed information explaining the unusual influence or high impact [that Rubin's] research has had on the overall field."  Upon review, these findings, and others, are arbitrary and capricious, as an abuse of discretion or running contrary to the evidence. *See Heredia v. Sessions*, 865 F.3d 60, 65 n.5 (2d Cir. 2017) ("[An] abuse of discretion . . . may be found in those circumstances where the [BIA's] decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." (internal quotation mark omitted)).

        First, the Decision Letter does not reasonably explain why evidence in existence prior to the preparation of the Petition carries more weight than new materials, specifically opinion letters.  Nor do Defendants cite any caselaw supporting this proposition.[4]  The court in *Chursov* rejected defendant's finding that the opinion letters were "not presumptive evidence of

_____

[4] The limited case law cited in the initial portion of the "major significance" section of the Decision Letter is misused.  For example, USCIS cites *Silverman v. Eastrich Multiple Inv'r Fund, L.P.*, 51 F.3d 28, 31 (3d Cir. 1995), and *APWU v. Potter*, 343 F.3d 619, 626 (2d Cir. 2003), for the proposition that the term "original" and the phrase "major significance" are not "superfluous" and therefore "have some meaning."  However, neither case arises in the EB-1 classification context, and it is generally unclear how these cases support the conclusion that Rubin did not submit sufficient evidence to establish the major significance of his scientific contributions.

eligibility" and that an original contribution "must be demonstrated by preexisting, independent, and corroborating evidence."  2019 WL 2085199, at *3-4.  Both the AFM and EB-1 classification case law focuses on the substance of opinion letters and not when they were written.  *Compare id.* (concluding that defendant's "excessive[] focus[]" on individual components of the EB-1 submission was arbitrary and capricious, rather than considering, as a whole, multiple sources of evidence regarding plaintiff's contribution to the field of bioinformatics and computational biology, including opinion letters from experts in the field), *with Hristov v. Roark*, No. 09 Civ. 2731, 2011 WL 4711885, at *11 (E.D.N.Y. Sept. 30, 2011) (upholding defendant's finding that plaintiff had failed to show that his contributions to the field were major, where, in part, a letter from the founder and executive director of a theater company did not address whether plaintiff was well known for "an influential original acting or screenwriting method" or had "otherwise impacted the field at the national or international level"), *and Lee v. Ziglar*, 237 F. Supp. 2d 914, 917 (N.D. Ill. 2002) (upholding defendant's denial of an EB-1 classification petition, in part, because letters submitted from top officials in the Korea Baseball Organization addressed plaintiff's ability as a baseball player, not as a coach).

Further, while the Decision Letter appropriately considered whether the opinion letters included specific information regarding the importance and impact of Rubin's research,[5] USCIS's finding that the letters did not contain this information is plainly contrary to the evidence.  For example, Dr. Robert Gutig, the Max Planck Research Group Leader for

---

[5] The AFM states that "USCIS officers should take into account the probative analysis that experts in the field may provide in opinion letters regarding the significance of [a petitioner's original] contributions," and that "[l]etters that lack specifics and simply use hyperbolic language do not add value, and are not considered to be probative evidence that may form the basis for meeting this criterion."  AFM at 8-9.

Theoretical Neuroscience at the Gottingen Graduate Center for Neurosciences, Biophysics and Molecular Biosciences and Professor at the Berlin Institute of Health, explains that Rubin's work "has shed light on some of the most fundamental principles of neuronal computation," "[and that Rubin's] tempotron model of neural learning and information processing. . . . has cracked open the barrier between current artificial intelligence approaches such as deep learning on one side and spoking neural networks in neurobiology on the other." Dr. Gutig specifically notes that Rubin "has performed the most difficult calculations on the information storage capacity of spiking neural networks," "[and when Dr. Gutig] organized an international workshop on supervised learning in spiking neural networks at the 2014 Bernstein Conference of Computational Neuroscience, there was no question that [he] had to invite . . . Rubin into the group of leading scholars in the field."

Similarly, Dr. Saul Kato, Assistant Professor of Neurology at the University of California's Weill Institute for Neurosciences, explains that Rubin's scientific works have "address[ed] two key theoretical aspects of Computational Neuroscience": (1) "the nature of computation that is performed by neurons in the brain and whether this computation is spike-rate based or spike-timing based," and (2) "the computational role of Excitation-Inhibition Balance," a widely observed phenomena in the brain. With respect to the former, Dr. Kato notes that spike-rate based on computation has been well known for several decades, "[but] has remained, despite the efforts of many, elusive for many years." According to Dr. Kato, "Rubin's work defined, *for the first time*, rigorous qualitative and quantitative constraints and learning algorithms for spike-time based on computation in the brain." (emphasis added).

The Decision Letter does not sufficiently explain why these detailed descriptions of Rubin's work, and those contained in numerous other letters, do not constitute evidence of an

original contribution of major significance.[6]  Similarly, USCIS does not identify which parts of the letters are "conclusory" or "hyperbolic."  USCIS's decision was therefore arbitrary and capricious.  *See, e.g.*, *Buletini v. I.N.S.*, 860 F. Supp. 1222, 1232-33 (E.D. Mich. 1994) (concluding that defendant abused its discretion by failing to address evidence of plaintiff's original scientific and scholarly work, including a book authored by plaintiff and opinion letters from experts in the medical field).

When the evidence is reviewed as a whole, Rubin has shown, by a preponderance of the evidence, that he has contributed original research of major significance to the field of neuroscience.  *See, e.g.*, *Chursov*, 2019 WL 2085199, at *3-4 (concluding that, when reviewed as a whole, plaintiff's submission "appear[ed] to have some evidence of an original contribution" to the field of bioinformatics and computational biology, where plaintiff submitted opinion letters from professionals in the field, two pending patent applications, published papers, evidence of other scholars' citations to the papers, presentations at conferences in the field and news articles); *Muni v. I.N.S.*, 891 F. Supp. 440, 444-45 (N.D. Ill. 1995) (concluding that defendant's decision denying plaintiff's EB-1 classification petition was arbitrary and capricious, where, in part, defendant overlooked "rather obvious facts" regarding the significance of plaintiff's contributions to hockey, including eight affidavits submitted by veteran NHL players, and certain awards plaintiff received); *Buletini*, 860 F. Supp. at 1232-33 (concluding that defendant abused its discretion, in part, where it failed to mention or address

---

[6] That the Decision Letter strongly suggests that the opinion letters do not "reach[] . . . beyond [Rubin's] employer(s) and [his] customers/clients" is not supported by the evidence.  The one letter from an employer -- CTRL -- specifically and objectively explains Rubin's credentials, performance and responsibilities at the firm.  The rest are submitted by acclaimed members of the neuroscience community, including two from recipients of the Society for Neuroscience's Swartz Prize in Theoretical and Computational Neuroscience, the top award in the field.

specific evidence submitted by plaintiff, including opinion letters which noted that plaintiff's work "was of national importance" and would "provide invaluable assistance to all persons who write or translate from the German language").

Rubin's work on the tempotron model of neural learning and information processing -- through his work on spike-rate based on computation -- is explicitly addressed and elaborated on in five of the eight opinion letters.  Rubin also submitted multiple peer-reviewed, scholarly articles in the world's leading scientific journals and a book chapter on neuronal coding; evidence that his published works have provoked widespread commentary among the global scientific community, as demonstrated by more than 114 peer citations, which is several times more than the average within his field; evidence of Rubin's participation at prominent speaking engagements and presentations at academic symposia, and receipt of multiple, nationally recognized prizes and awards for excellence in his field.  Based on this evidence, the Court concludes that Rubin carried his burden of satisfying at least three of the ten criteria outlined under 8 C.F.R. § 204.5(h)(3), and that Defendant's finding to the contrary was arbitrary and capricious.

With respect to Rubin's scholarly articles, the Decision Letter states that "the appropriate analysis is to determine whether a petitioner has shown that his individual articles . . . have been considered important at a level consistent with original contributions of major significance in the field."  But this proposition is contrary to the AFM, which states that "peer reviewed articles in scholarly journals that have provoked widespread commentary or received notice from others working in the field . . .  may be probative of the significance of the [petitioner's] contributions to the field of endeavor."  AFM at 8.

The Decision Letter notes, without explanation, that "presentations are not sufficient

evidence under 8 C.F.R. § 204(h)(3)(v) absent evidence that they were of 'major significance' in the field."  To the extent this language suggests that Rubin's speaking engagements and academic symposia in which he presented were *not* of major significance, this conclusion is contrary to the evidence; according to Dr. Abbott, the Bernstein Conference, which is just one of the presentations and symposia cited by Rubin, is "the most important conference in the [neuroscience] field held in Europe."

**B.**      **Evidence of Performance in a Leading or Critical Role**

To satisfy the criteria set forth in 8 C.F.R. § 204.5(h)(3)(viii), a petitioner must submit "[e]vidence that the [petitioner] has performed in a leading or critical role for organizations or establishments that have a distinguished reputation."  8 C.F.R. § 204.5(h)(3)(viii).  Upon review, the finding in the Decision Letter that Petitioner had not submitted such evidence was an abuse of discretion and is contrary to the evidence.

First, the Decision Letter states that the "key question" regarding whether Rubin satisfied the evidentiary burden under 8 C.F.R. § 204.5(h)(3)(viii) is whether his roles were "leading or critical to an *entire* organization or establishment, as opposed to a mere department or component within it."  As neither the AFM[7] nor case law imposes any such requirement, this finding constitutes an abuse of discretion.  *See, e.g.*, *Chursov*, 2019 WL 2085199, at *6 (concluding the same where defendant found that an opinion letter from the director of plaintiff's research group did not provide "detailed and probative information" specifically addressing how plaintiff's role was leading or critical to the organization as a whole, as opposed

---

[7] The AFM directs USCIS officers to examine whether petitioner played a "leading" or "critical" role within an organization by assessing, in part, such factors as whether a petitioner's contributions were significant to the outcome of the organization's activities.  AFM at 10.  The AFM further notes that even a "supporting" role may be considered "critical" if there is sufficient evidence that performance in the supporting role was important.  *Id*.

to just his research group).

Further, the Decision Letter does not show that USCIS considered Rubin's role at CTRL. For example, Patrick William John Kaifosh, CTRL's Chief Science Officer and an expert himself in the fields of neuroscience and neural interfaces, states that Rubin "has exceeded the high expectations that [CTRL] . . . had for him" by, for example, "creat[ing] the foundational algorithms for the company's approach to two dimensional (2D) neural control, enabling users to accurately navigate a computer cursor simply by decoding the signals from their body." This "breakthrough contribution[] . . . [is] at the heart of the CTRL-labs' go-to-market strategy and . . . long-term vision." The Decision Letter does not address why these statements, and other information in the record regarding Rubin's research at CTRL, are not evidence of performance in a leading or critical role. The failure to do so was arbitrary and capricious. *See, e.g.*, *Chursov*, 2019 WL 2085199, at *6 (concluding the same where defendant failed to address an opinion letter regarding petitioner's role in "leading and managing a bioinformatics and biostatistics part of a project to develop an anti-cancer vaccine within her group" (internal quotation mark omitted)).

## C.  Remand

Because USCIS concluded that Rubin had failed to establish at least three criteria under 8 C.F.R. § 204.5(h)(3), USCIS did not engage in a final merits determination.[8]  *See Kazarian*, 596 F.3d at 1119-20 (concluding that, to satisfy the burden of demonstrating "extraordinary ability," a petitioner must *also* show "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor," 8 C.F.R. §

---

[8] Plaintiffs argue that USCIS's failure to engage in a final merits determination was, in itself, arbitrary and capricious.  Based on the relevant caselaw, this argument is meritless.

204.5(h)(2), and "that the [petitioner] has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise," 8 C.F.R. § 204.5(h)(3)).

Plaintiffs argue that the case should be remanded in with a declaration that, as a matter of law, Rubin has satisfied the evidentiary showing required by a final merits determination. While the Court is sympathetic to this request, particularly where, as here, the record is fully developed, it is appropriate for USCIS to make that determination in the first instance. Because the Decision Letter did not include a final merits determination, the case is remanded for that purpose. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) (When an agency acts arbitrarily and capriciously, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."); *accord Chursov*, 2019 WL 2085199, at *8 (remanding to USCIS for consideration consistent with the court's decision).

In considering on remand whether the evidence indicates that Rubin has sustained national or international acclaim, or is one of the small percentage of neuroscientists who have risen to the top of the field, USCIS should consider Rubin's opinion letters, which explicitly address the "extraordinary" place that he occupies in the field of neuroscience. Dr. Larry Abbott, William Bloor Professor of Theoretical Neuroscience at Columbia University and co-creator of the Columbia University Center for Theoretical Neuroscience, states that Rubin "is on a career trajectory" to become a "world leader[]" in the scientific and biomedical study of the brain. Dr. Abbott also states that "[v]ery few people in the world at any career stage [in neuroscience] . . . have the skill that . . . Rubin displayed in [his graduate study work]." Dr. Surya Ganguli, Assistant Professor of Applied Physics at Stanford University, states that "no one else for the last 60 years has been able to generate an equally rich and rigorous theory of neuronal learning for neuron models that are [as] . . . biologically realistic [as those created by

14

Rubin]."  Dr. Timothy O'Leary, as assistant professor at the University of Cambridge in the field of Information Engineering and Medical Neuroscience, states that Rubin has contributed "ground breaking research" regarding "one of the most debated and long standing questions of the field [of neuroscience]."  Dr. Haim Sompolinsky -- Professor of Physics and Neuroscience at the Hebrew University of Jerusalem's ELS Center for Brain Sciences and the Director of the Swartz Program in Theoretical Neuroscience at Harvard University's Center for Brain Science -- stated that Rubin "ranks at the top 3rd percentile of PhD students that [he has] . . . known in the last two decades."  *Cf. Noroozi*, 905 F. Supp. 2d at 545-46 (concluding that defendant's determination -- that plaintiff did not merit a favorable judgment at the final merits stage -- was justified and reasonable, where plaintiff "rank[ed] 284th in the world in table tennis, placing him in the 17th percentile of ranked players, and finished in 65th place in the 2008 Olympic table-tennis competition"); *Kazarian*, 596 F.3d at 1118, 1122 (concluding that plaintiff had failed to establish qualification for EB-1 classification, in part, where letters from experts stated that they had "formed a good opinion" of plaintiff's research and his work was "of the caliber that one would expect from a young professor at a strong research-oriented university").

The case is therefore remanded for a final merits determination consistent with the evidence and limited EB-1 classification case law identified in this Opinion and Order.

## IV.    CONCLUSION

For the foregoing reasons, summary judgment is GRANTED to Plaintiffs and DENIED to Defendants.  The case is remanded for a final merits determination consistent with the evidence and limited EB-1 classification case law identified in this Opinion and Order.  The Clerk of Court is respectfully directed to close the motions at Docket Nos. 23 and 26.

Dated: August 13, 2020
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE